In the ordinary case, in most cases, a police report detailing the defendant's past criminal conduct will shift the burden of proof to the defendant to show that the report is materially untrue, inaccurate, or unreliable. But when a grand jury subsequently decides to no-bill the defendant, that is, to find that there is not even probable cause to believe that he has committed that offense, the burden should shift back to the government to corroborate the original police report with additional evidence. Breyer, is the burden shifting back, or did it never, did the evidence not exist in the first place? What's the burden shift? I think those are equivalent. And those are — in virtually every case that describes this burden-shifting paradigm, it says the burden shifts to the defendant to show material untrue or unreliable, assuming — I'm sorry. I mean, I would think if there's evidence presented in the PSR that the defendant wants to object to, then it's got to present rebuttal evidence at the hearing. So here's what happened. I mean, it's a pretty simple little case. Felon in possession. The Rule 11 colloquy is very straightforward. At sentencing, the mother shows up. But in — the PSR says there's, you know, this arrest record's detailed and has facts. Then, if I'm not mistaken, your client just says, I object procedurally and substantively. It doesn't ever then say those facts are wrong. So — Right? Right? Because that was the government's response to your objection to the PSR. So — so two points about that. The first is that cases like Trujillo say that if — and Harris has a great discussion of this — if the government has presented sufficiently reliable evidence in the PSR, then the burden shifts to the defendant. But they also say that the defense burden is to show that it's materially untrue or otherwise demonstrate, which is not necessarily a burden of production. It can be merely a burden of persuasion that it is otherwise unreliable. So I — first, the PSR may be relied on by either party. So if there is a burden of production of evidence, then the defense has met that burden by marshalling the PSR. Any party may rely on anybody's evidence to — to satisfy a burden of production. But if the Court doesn't agree with that, then we would submit that the PSR never shifted the burden to the defendant in the first place, and that Harris tells us at 231 and at Note 3 that in some cases, even a factual recitation by a police officer of the defendant's conduct will be inadequate to — to trigger the burden shifting in the first place. And that's an unusual case, but we can imagine other cases where that might be so. If the — if the police report says, I saw the defendant across a busy highway and I think that was him, then in those cases, we might imagine that that evidence might be — not be reliable enough to shift the burden in the — in the first place. We would submit that if that — the PSR demonstrates that the conduct has been no-billed, that that's another such case where the burden has never shifted in — in the first place. You say that's true when it's a grand jury no-billing. What if it's a jury acquitting? When it's a jury acquitted, I agree that that's a — that's a distinguishable case, that — that a no-bill is different than — than a jury's acquittal for several very important reasons. The first is that the standard of proof from a grand jury to a Federal sentencing procedure proceeding increases. It doesn't decrease. So — so that's — that's one reason. There — there are actually many very good reasons to — to align our — our presumptions with common sense and say that a no-bill tends to show that the original allegation is unreliable. There's the standard of proof issue, but there's also all the immense procedural advantages that the State enjoys in a grand jury proceeding. It may introduce hearsay. It has no Brady obligations. The proceedings are ex parte. The defendant doesn't have the right to counsel. He doesn't have the right to testify. It need not even be unanimous. So all of that is very different from a — an acquittal in which you have strict procedural restrictions on what — how the government proves its case and a very high burden of proof to do it. Ginsburg. It didn't prove its case. I'm sorry? Acquittal, they didn't prove its case. If there was an acquittal — right. If there was an acquittal, they didn't prove their case. But as Watts tells us, you know, we can — we have to confine that finding to the precise nature of the finding at issue in an acquittal. So we only know that it's just a little bit below beyond a reasonable doubt, and we only know that it was these precise collection of elements that produced it that the jury found were not — The honor reasonable doubt is higher than preponderance. It's higher than preponderance, right. And the other important thing about difference between a jury and a grand jury is a grand jury is not going to indict you for anything. So if you come in with just a mass — a ball of conduct and it says, these collection of elements we don't think amount to probable cause, but this one here, we think that — that lesser offense is a — is worth probable cause, then the grand jury finding you guilty — or finding — declining to indict you on any of it basically demonstrates that the whole — all of the conduct has been found to be non-criminal or at least non-Felonious, whereas a grant — whereas a jury is entitled to find the evidence to pass only on — No bill is unusual, hasn't been discussed by many courts, the no bill issue, right? But — but the underlying issue here is not a small one, correct, in that many people plead, they expect the range, then all of a sudden the PSR says there's a basis to upwardly depart, which is going to create a huge amount of exposure, correct? Are you with me so far? I am. Okay. So the district court then in — here indeed says, yeah, I'm looking at your arrest history, and your arrest history makes me think under representation of criminal, we're going to go above the range. That's exactly what happens here. So it becomes really important what we say when we do allow sentencing judges to rely on arrests alone. Fair to say? Yes. Okay. But we have clear law that says arrests, when validated by sort of rich facts, can be relied on. That — I agree. Okay. So here we do have a pretty rich description of this kidnapping. I mean, it's very, very detailed. Yeah. And so put aside the no bill and whether that eviscerates all the facts, would you still say that the district court couldn't rely on this very detailed description of your client's kidnapping because the victim couldn't identify him, just the exculpatory portion, as opposed to the no bill oddity?  Are you in? Yeah, I am. I do want to make clear I think the no bill radically changes the case. But I would not agree that the depiction of the facts in this case are adequate, but I think the Court doesn't have to reach that. And it's not merely the ID, the absence of the ID.  And ask to go please bring back the ransom. I mean, I think that is a — it's not hard to see why the grand jury might have no billed that conduct. There are several very troubling parts of that recitation that raise a lot of doubt about whether or not that's an adequately reliable account. There's the absence of the ID. There is — that it is essentially the victim's word that the event happened. There's the witness's statement that the victim owed a drug debt and that there was a dispute about a drug debt, which provides some motive — reason to doubt his motives. And there is this unusual part of the story that the victim says, I was kidnapped. They called for my father to bring the ransom. And then they released me and said, bring back the ransom. They said take the truck, right? They said they would take the truck, but they never took — he never took the truck. He just said, go get the title. So that's an extreme — Should Judge McBride have done here? Should Judge McBride have said, okay, I'm just — there's no reliable evidence to support the arrest, no bill plus victim exculpatory. Therefore, I'm going to hear evidence on it? It's contested? Yes, or — I mean, the judge, I suppose, could order the parties to present evidence, but — Did you ask for a hearing? No. And your argument is there's been no burden-shifting. You don't have to. Precisely. And it is important for defendants to be able to rely on the burden-shifting regime at sentencing because 3E1.1 provides a cost to the defendant to making affirmative factual claims. And so — You're saying — in that then the court would say you're not accepting responsibility? Yes. That's a possibility. Obstruction is also a possibility, particularly if there's evidence and it's disbelieved. So a person in Mr. Gibson's situation who is, in fact, innocent of the prior conduct needs the protection of a burden-shifting regime that looks carefully at the reliability of the evidence that's coming in. I haven't seen that the government is saying here we could affirm because Judge McBride said 3553, I'm going to get there anyway. That's not in this case? The government has not attempted to shoulder that burden. Nor has the government said that the other arrest, the burglary arrest alone justified the uproar? So it's all pinned on this kidnapping arrest? That's my reading of the briefs. And I think that's — I think that that's a wise failure to contest that or decision not to contest that. The government will no doubt tell us more about that. But I think that the case of Johnson — United States v. Johnson in 2011 provides a really good discussion of harm in these circumstances. And it says that the possibility that the sentence could have been justified by other evidence rather than the — other than the arrests does not justify affirming a sentence that was, in fact, based in part on the arrests. And indeed, in that case, you have a court that said affirmatively, this sentence is not based on the arrests, but because there are — there was other discussion of them, they appeared to figure into the sentence, and so this court vacated and remanded. Here, you don't have anything like that. You don't have any kind of disclaimer of that. And you have basically four objections from the defendant to this. You have the pre-sentence objection. I object generally to the discussion of — it doesn't mention this incident, but I object generally to the discussion of an upward variance. That was in response to the pre-sentence report. That's right. And then you have in court what I think is a — given how concise it is, an extremely well-put-together, dense objection, you know, on defense counsel's feet to this, in which he says, in particular, the standard of proof is lower. We're looking at a cold record. The grand jury had potentially witnesses. That was then. This is now. That was closer to the time. And so I don't think that we can, on that basis, increase the sentence. If the victim hadn't misidentified and there was no evidence about a no bill, you'd agree that the paragraph based on a sheriff's report would be enough. You would then have the burden to disprove it. Fair to say? I think so. I think that would — I mean, that would be — without the no bill, this is a very close case. You know, this is right at the line, I think, of — of — of reliability. But — but the — I have two other questions. One's factual and one's procedural. Mm-hmm. Factually, there's a reference to the fact that the victim still did describe tattoos that correspond to your client. That's right. Could that be enough to create the reliable that it was, in fact, him, the kidnapper? It — in the face of a no bill, no. In the face of a no bill, the procedural advantages of the government in that situation and the fact that a grand jury is instructed by Texas case law to indict if it finds probable cause, it's not a mere exercise of discretion. It means that is a — a fact-finding by another court that this — that the subsequent court should respect absent a reason not to do so. Procedurally, you've asked to vacate and remand for resentencing. That's right. Okay. You just said, that's right. Normally, I would think the government wouldn't get a second bite at this to come up with evidence. But it is your request, and we seem to have done it sometimes. You — that was your request, correct? The request is — is to vacate and remand for resentencing. So at that point, Judge McBride could say, you know, on the whole picture, I've just decided this is the right point to get to. This Court has the — the authority to decide its mandate however it likes. 2106 gives it — would give it the power to restrict the — the evidence of — that the government — That hasn't been your request. I mean, and it seems fair. You just want to know whether he was the kidnapper or not. And whether there was a kidnapping. But — Yeah, that's — I just want to say, my request hasn't been inconsistent with any limitation on that. No, I don't think so. Yeah. I just wanted to — So I leave it to the Court to decide what the — what the fair response is. But I do want to point out to the Court, it has under 2106 the power to — to limit the scope of the remand. If it doesn't think it's fair, then the government should get — should get another bite at the apple. But your lineup didn't allow the tattoos to be shown, correct? I have no idea. I'm afraid I don't know whether that's true or not. You know, that — but — but the party — the institution with the best access to that information is — was the Texas grand jury. And I submit that that should at least be enough to play hot potato with the burden of proof. Thank you. Your Honors, may it please the Court. The appellant argues that a district court has to give special weight to a no-bill when, in fact, a no-bill carries virtually no weight in any other context outside the sentencing regime. A no-bill has no preclusive effect. A no-bill is not a final judgment. A no-bill is not a decision on guilt or innocence. A no-bill can be the product of a minority vote by the grand jury. A no-bill has — does not trigger double jeopardy. And, in fact, the Supreme Court said that the Constitution does not bar a grand jury from returning an indictment when a prior grand jury refused to do so. And nothing in Texas state law prevents a prosecutor from re-presenting a no-billed case to another grand jury or, in fact, to the same grand jury. In fact, a Texas prosecutor can take the exact same facts, the exact same evidence — It's not an acquittal, right? It is not an acquittal, no. Acquittal seems very harmonious with still finding there's a preponderance of proof because it just wasn't beyond a reasonable doubt. That whole Watts line of authority seems different. I mean, no-bills are unusual, and the government's not usually happy when they happen. My experience is they almost always do relate to some defective proof. But I agree with you that, as a matter of law, we just don't know what the grand jury was thinking. But that's going to be really hard to impute to a defendant because grand juries are secret. So on that theory, you would never be able to discern anything from a grand jury no-bill, and that may be the government's position. That is the government's position, Your Honor. But then you've still got a paragraph. What validates it? How do we know? We've got the victim who can't identify the person who's said to be the kidnapper. If we set aside the no-bill entirely, as the government argues we should do, the facts of the case are sufficient and very detailed to allow the district court to make a finding by the preponderance of the evidence, in addition to the fact that the victim identified the defendant by a series of tattoos, not just one or two, but, according to the PSR, a number of tattoos that matched tattoos that were, in fact, on the defendant's body. There was corroboration by the defendant's roommate. The police went back after the incident and interviewed the defendant's roommate, who corroborated the fact that the defendant was, in fact, there, disagreed or did not admit that a kidnapping had occurred, but said that the victim had arrived, wanted to purchase drugs, which is consistent with the victim's story, didn't have money, and that some sort of altercation or heated dispute broke out between the defendant and the victim. And the police also found blood on the floor consistent with the victim's story that he had been stabbed at the location. So all of those things, the defendant's roommate's story and the blood on the floor, corroborate the victim's account of the events. And we should note that while the appellant has pointed out some potential problems with finding that these facts ultimately amount to a Texas state kidnapping, specifically the defendant's voluntary release of the victim prior to any payment of ransom, the district court did not find that a kidnapping occurred. The district court's factual findings are very specific, and the district court stopped short of finding that the defendant committed a Texas aggravated kidnapping as charged in the original indictment or the proposed indictment. What the district court found was that the defendant, Mr. Gibson, engaged in certain very specific violent acts, that he grabbed and beat the victim, that he stabbed the victim, and that he demanded ransom money. Beyond that, the district court did not go. And the district court did not find that an offense was — that this particularly charged offense was committed. That's an important fact because the district court doesn't have to make findings on the defendant's mental state or other elements of the kidnapping in order to maintain its decision that these violent acts occurred. Roberts. What's the government's rule of law here? Because I think you would agree the case law is clear. A bare-bones arrest can't count. Correct. So here, as I read it, we've got not a bare-bones. We have a description, but very candidly, the description says didn't. Didn't lead to an indictment. Grand jury didn't accept it as proof or we don't know what. Plus, the victim didn't even identify him. So I guess an arrest has insufficiently reliable evidence to support it if what? Finish the sentence. A bare arrest record, Your Honor. Not just — I'm saying an arrest that then has — will all descriptions always count even if a grand jury rejects them and even if the victim says he didn't do it? What description wouldn't always validate the arrest as countable, then? Certainly. The description has to be sufficiently detailed that the district court can make an evaluation of the facts and determine — So that's sort of where I see the Judge McBride sort of thinking and the probation officer, they're omniscient. They just see detailed description and say, I know that that happened. How can they do that? It's a very fact-intensive inquiry and it's going to be a case-by-case inquiry, but certainly — It's like a hunch. I just see enough description. There's nothing to support it. What supports it says it didn't happen, but I know it happened. How is that not what probation did here? Within that detailed description, we have a corroboration of the victim's account of what happened based on an interview of a different witness, the defendant's roommate. That becomes crucial. So your position is that in spite of the victim not identifying him, the roommate implicates him in violative conduct? In an assault. In an assault. The roommate does not corroborate the subsequent events when the victim is taken away from the house. He does not say that. He says that there was an assault. What did he say he did that would be an arrestable offense? He says he puts the defendant at the scene. That's not an arrestable offense. Well, if identification by the victim is the thing that's at issue, then the fact that the roommate puts the defendant at the scene as the individual that was in a dispute with the victim — Your presence is not sufficient under any crime, right? Correct. But we're adding these accounts together. The flaw in the victim's account, if there is one, is that he failed to identify the defendant in a photo lineup. But he did identify tattoos that matched to the defendant. So there was some uncertainty. There were tattoos there and the fact that the tattoos, according to the police officer, resembled the defendant's. Correct. And there was blood on the floor consistent with the victim's account of having been stabbed. But no one tests the blood. We don't know that based on what's in the PSR. There was blood on the floor consistent with the victim's account of being stabbed. I mean, you know better than any of us that — and you've got plenty of time — but what, 95 percent of cases now plead out. So the world of criminal justice is all sentencing. And it's this preponderance suffices. Judges can sentence if they find to a preponderance. So factual, reliable factual evidence is absolutely critical. Here, the government, I would think, has to say we've got all sorts of problems with this bare arrest or described arrest that seems to undescribe itself. Let's just have a hearing. Well, I would point to several additional facts. The event itself was reported by the victim's father. And based on the victim's account of the event, the defendant made the victim call his father to ask for ransom. The father is the one who reported. So that's an additional witness corroborating the event. He reported that I was, in fact, called, and my son demanded ransom. Some people could have been called in at sentencing, right? Some of them certainly could have. We don't know whether they'd be willing to testify, Your Honor. And that's one of the problems with giving weight to the no bill. We don't know what evidence was presented to the grand jury. If you're not willing to testify, it doesn't seem like you can put people in prison for the fact that — the facts they won't testify to. And we're not putting anybody in prison. This is a sentence — He gets an upward departure based on a preponderance of the evidence, not a beyond-the-reasonable-doubt standard, which would be required to put him in — Yeah, okay. We're going around a circle. It's just — it's a close — it's a tough case. What's your best authority? What case do you have where a court upwardly varies or departs based on an arrest where the victims can't identify the defendant and the defendant was never prosecuted for the arrested offense? Do you have any case? Specifically on those facts, no. But again — and I'd continue to point to facts in the record of the PSR. Do you have any case where a judge upwardly departs based on an arrest that then led to a no bill? Doubt it? No. What about — No bills, no your honor. Do you have any case where a sentencing judge upwardly departs based on an arrest where the victim later couldn't identify the alleged kidnap or any offender? Do you have a case for that? We have cases within the acquittal context where — Not acquittal. We agree that's different. Do you have a case? So we don't have cases for either one justifying a larger prison sentence. And now in this case, we've got both together. Correct. We have no case law specifically on the issue of no bill. But we would argue that the logic of the acquittal cases applies. It seemed like the objection was sort of abrupt. And then at sentencing it was abrupt. I'm fully sympathetic. The mother comes in. The district judge said, listen, I'm open on the upward departure. You can talk about it. And there wasn't an exact, hey, your honor, I'm not the kidnapper. But then it doesn't seem too hard since they aren't asking for you to be bound. Go back and really just find to a preponderance if he was the kidnapper or not. Well, that's correct, your honor. They never disputed the facts in the PSR. They never claimed that the facts recited in the PSR were inaccurate. They simply relied on the existence of a no bill to undermine those facts. And we would point to the case of Meriquin Salazar. They did object. PSR says we've got no other proof to support it, right? PSR, the addendum says there's nothing else, your honor. Correct, your honor. And we would point to the series of cases that allow detailed police reports to stand in for proof in the sentencing context. We don't believe that the existence of a no bill undermines that. They produce no substantive evidence or argument to undermine the facts, the very detailed facts in the PSR simply relied exclusively on the existence of a no bill in and of itself to undermine the facts and shift the burden back to the government. Did they deny the stabbing and the possession of the knife? They did not deny that, no. Was the knife tested for fingerprints? We don't know in the record. But we do know, and an additional fact, we do know that the victim was in the hospital. So something violent must have occurred to cause the victim to be in the hospital. Blood was found at the scene where the victim said that he was stabbed. The defendant's roommate puts the defendant at the scene where the victim says he was stabbed. The defendant's roommate says that the defendant and the victim had some sort of dispute about a drug debt at the scene where the victim was stabbed and blood was found. It sounds like at a hearing, pretty easily, even hearsay, right? You can offer hearsay at a sentencing hearing. The father comes in, or the roommate comes in, or the victim comes in, and they actually show the victim the tattoos. It's going to happen really quickly. All of those things could happen, Your Honor, if the witnesses were willing to testify. These are drug dealers, and looking at the record, I believe that the district court can speculate that the reason, or a likely reason, that there was a no bill was that someone, possibly the victim who was himself involved in drug dealing, may not have wanted to testify about exactly what happened. Mr. Wright never said, I'm going to just rely here because I'm worried about danger to other people, right? That complicates the sentencing considerably. He never implied, and neither did probation, that people were at risk to come and corroborate. That's correct. So that's an interesting thought. Such a hearing could certainly occur. It's not necessary because of this extensive case law that district courts at sentencing may rely on detailed factual recitations. And certainly, I don't believe anyone disputes here that we have a very detailed factual recitation. This is not a bare bones arrest record. And the government would certainly concede that if it were a bare bones arrest record or an arrest record plus a very broad overview or a very sketchy description of the facts, that would be insufficient to support any kind of factual finding at sentencing. But that's not what we have here. And nobody claims that that's what we have here. We have a description of the facts that is so detailed that we can, in fact, have a discussion here at the Fifth Circuit about whether those facts are sufficient to establish whether the defendant did this, that, or the other thing. That's a very detailed description of facts. We've got a description that ranges three pages in the PSR that describes interviews with the defendant's father, I mean, I'm sorry, the victim's father, the victim, the defendant's roommate, forensic evidence that was discovered at the scene. It's quite a record to allow the district court to dig in and make its own factual inferences and determinations. The government didn't ask to go upward, did it? We did not, no. But you're here because he did, and you're defending his experience. We believe that that was within the district court's discretion. It was a 12-month upward departure. It certainly wasn't outside the district court's discretion. Did the PSR recommend it? The PSR did recommend an upward departure, yes. And based not only on this offense, but two other offenses that did not result in criminal history points and were not calculated into the sentencing guidelines. This offense and those two others caused the district court to determine that the criminal history was underrepresented and that a 12-month higher sentence was necessary. If you haven't asked us in the brief to say, well, he could have relied on those alone, we can get around the kidnapping problem. No, we have not argued harmlessness, Your Honor. It's difficult or impossible to disentangle the district court's thinking. Certainly, he gave weight to this particular offense, as well as those other two. But we can't say that if you subtracted this one, his sentence would have been exactly the same. He did not say that at sentencing. He could have said that, yes, Your Honor. He could, and if this were remanded, he may very well give the same sentence. We don't know, and that's why we didn't argue harmlessness. There's not enough in the record for us to rely on that. Your Honor, we would also bring the Court back to the comparison between no bills and acquittals, bearing in mind, of course, as I argued earlier, that no bills have no preclusive effect, that they don't bind subsequent grand juries, they don't bind prosecutors, and therefore, they should not bind a Federal district judge at sentencing. But also, the reasoning that the Supreme Court gave when it announced that a district court could consider acquitted conduct at sentencing is even more applicable to a no bill. In Watts, the Supreme Court said, an acquittal is not a finding of any fact. It is impossible to know why a jury found a defendant not guilty on a certain charge. Without specific jury findings, no one can logically or realistically draw any factual inferences from an acquittal. That's certainly true with an acquittal. It's even more true with a no bill because of the secrecy. We don't know what evidence the grand jury considered. We don't know what charges were necessarily brought before them to consider. We don't know what witnesses testified or what evidence they had before them. They say acquittal is a higher standard. It is a higher burden of proof, Your Honor, yes. But an acquittal is also a final judgment. An acquittal is the product of a unanimous verdict by 12 jurors. A no bill can be actually a minority verdict. In Texas, 12 people sit on a grand jury. Nine are required to indict. So a mere four people can decide not to indict and deliver a no bill. Perhaps a better analogy is we don't find guilt from an indictment, so we shouldn't find innocence from an acquittal, from a no indictment. And that's certainly true, Your Honor. We don't, following that analogy, we don't give any weight to a bare arrest record. Even if the arrest was proper based on probable cause, we don't give that any weight at sentencing. We need more. So we shouldn't give any weight to a no bill because it's also derived from the same sorts of procedures. We wouldn't give any weight to the negative. We don't give any weight to the positive. We don't give any weight to the fact that a grand jury returned an indictment if we know nothing more about the background of that case. And we shouldn't give any weight to the fact that they failed to do so. And certainly the law doesn't give any weight to that fact in any other context. The prosecutor can turn around and reindict with the same evidence the next day in front of the same grand jury. Your point is basically it's a non-event. You still have to prove the preponderance and the procedure and all that, but the no bill is a non-event just as an indictment would be a non-event. Correct. Correct. Yes, we certainly still carry the burden of having a detailed factual recitation. We believe we've... The underlying inquiry is, is there indicia of reliability that this occurred? That's a red flag, right? It didn't get past what a grand jury usually does, which is assess the government's evidence for probable cause. I don't believe that's a red flag because there are so many uncertainties surrounding what the grand jury does. We don't know what evidence they heard. One of the things that appellant... Point, but then highly atypically, we also have the victim saying, not the guy. That's just really difficult for me to still say then, but I know it was the guy. I think that's perhaps too strong. He failed to identify the defendant in a photo lineup, but he did identify the defendant by unique tattoos on the defendant's body. When you say he did, I thought it was the sheriff's report saying those tattoos are similar to what the victim told us. Correct. He... He... Different than the victim saying, I've seen his tattoos and those are the ones. That opportunity, as far as we know in the record, that opportunity was never provided to the victim. He was presented with a photo lineup, presumably of the... So what's the reliable support? It's descriptive, but it acknowledges candidly that the most important person, not the grand jury, the victim. So again, it's just so simple to ascertain, have a little bit of a contested hearing. And if we were operating on a beyond the reasonable doubt standard, we could certainly understand why a jury might fail to convict or might acquit based on the victim didn't identify the defendant in a photo lineup. But in this context, we're operating on a different, lower standard at sentencing, and there is ample evidence in the record corroborating the victim's accounts of events. The only negative fact is that he failed to identify the defendant's face in a photo lineup. There's corroboration... I don't mean to be rude. Oh. Headline. I apologize, Your Honor. We ask that you affirm the district court's judgment. Thank you, Your Honor. Thank you. May it please the Court. I want to take a little bit of issue with my colleague's statement that the court did not find a kidnapping here. If you look at pages 92 and 93 of the record, the district court said, I can tell from a preponderance of the evidence that the defendant struck somebody by the name of McCleary and had a knife as he was hitting him, and then he stabbed McCleary in the right thigh. He engaged in some serious conduct, and these things are recent. And then he directed the person that he had assaulted to call his father and tell his father they wanted a ransom, and finally the defendant said he was willing to accept the truck as ransom, and I find from a preponderance of the evidence that those things happen. So I'm not sure what the missing element is for a kidnapping here. The court didn't say, I find this part credible, but the rest of the kidnapping is— There's an opposition as to how Judge McBride knew all that to be true. I don't—how did he know that? I think that that's not a reliable—that wasn't a reliable finding for him to say that he knew that to be true. The roommate's testimony, about the sheriff's report. The sheriff's report— The explanation. I'm sorry? The roommate and the father. The roommate and the father. Well, the father called law enforcement, all right? So that— So did the victim. I mean, the victim—so all that shows is that somebody had a motive to get the police involved. And the roommate's testimony, I think, tends to discredit the police report because he doesn't say anything about a kidnapping. He says he came here and there was a—and we had an argument about the price of drugs. So, you know, that is a manifest problem in the police report. Cleary may have come. They may have all been doing drugs. But Judge McBride decides by preponderance that he's stabbed and a ransom occurred. The roommate doesn't say that. That's right. The father says—somehow the father knows people were stabbed and held? That's right. Does he? Did the father say anything about stabbing? It doesn't—the PSR doesn't say that, you know. We don't know. I think we're—we may be getting a little bit seduced by the detail of the police report and we have—creating a false sense of certainty about it. The institution that is closest to these questions with the best resources to find out about them is the grand jury. I'm not saying that their finding has to be preclusive. All I'm asking is that we give it some weight. I want to take issue a little bit with my colleague's suggestion that in no other area of the law does a no bill have any weight. RRR, a State case cited in here, and there is another case cited along next to it, say that—use a no bill, give it weight in the context of expunction to say that a no bill demonstrates that a grand jury found there was not probable cause. So—and the fact that there was—that it is not accorded decisive weight in the double jeopardy context, to my view, only demonstrates another procedural advantage that the State has in the context of a grand jury. So not only do we—did they issue a no bill in this case, the prosecutor didn't even try again with new—with additional evidence in this case. So all I'm asking for is that we align our presumptions with common sense and say that a no bill is a significant event that it tends—that is a red flag about the reliability of the police report and that for that reason due process requires that there be something besides a police report that is presumptively available to a prosecutor presenting the case to the grand jury in the first instance. As respects Watts, I want to just point out four very quick distinctions between the present case and the cases in Watts. The first is the standard of proof, as we have discussed here, that that was an acquittal, this is a no bill. The standard of proof goes up to Federal sentencing from the grand jury. Two, Watts was talking about cases where there are preclusive—where a defendant was—defendants were asking for a preclusive effect to an acquittal. Here, we're only asking that the no bill be given weight in a reliability determination that it shift a burden of proof. Three, in Watts cases you had district judges that had tried the cases and heard the evidence on which they relied to make the preponderance findings. Here we have cold records, a court looking at a cold record and a police report that was available to a subsequent institution that found—that decided not to act on it. And finally, I think there may be—well, I'll leave it there. But I do want to look—just ask you to look at 156 and 157. The parts that say that a grand jury—that an acquittal is not a finding of fact go on to say, for this reason— Breyer. I'm going to cut you off, too, because I cut him off. Fair enough.  We will hear the next case, 17-405-2.